IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

GEORGE BARBER,

     Plaintiff,

     v.

QUITMAN COUNTY, GEORGIA,

CHARLES DAVIS, Sheriff
in his individual capacity,

DEWAYNE BAIDSEN, Deputy Sheriff
in his individual capacity,

     Defendants.

CIVIL CASE NO.:

## COMPLAINT FOR DAMAGES

COMES NOW George Barber, a Plaintiff in the above styled action and files this his Complaint for Damages.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. George Barber ("the Plaintiff") alleges that he was illegally and unconstitutionally

1

detained, arrested, intimidated, harassed, injured, and subjected to excessive force by Defendant Deputy Sheriff Dewayne Baidsen upon direction of Defendant Sheriff Charles Davis of the Quitman County Sheriff's Office in violation of the First and Fourth Amendments of the United States Constitution and Georgia law. Plaintiff also alleges that he was detained and arrested in retaliation for the exercise of his First Amendment rights.

Plaintiff further alleges that Defendant Quitman County has an unconstitutional policy and practice of providing inadequate training to its officers and uses inadequate hiring procedures which resulted in the false arrest that is the subject of this suit. Finally, Plaintiff alleges that a final policy maker within Quitman County – specifically Sheriff Charles Davis - ordered the illegal arrest and detention of the Plaintiff based on personal favoritism.

## PARTIES

1.

Plaintiff George Barber is a resident of the State of Georgia, United States citizen, and over the age of eighteen.

2.

Defendant Dewayne Baidsen is a Sheriff's Deputy employed by the Quitman County Sheriff's Office. The headquarters of the Quitman County Sheriff's Office are located at 121 Main St. Georgetown, GA 39854 in Quitman County, Georgia. Defendant Dewayne Baidsen may be served at this address. At all times relevant to this lawsuit, Defendant Dewayne Baidsen acted under the color of law. Defendant Dewayne Baidsen is sued in his individual capacity.

3.

Defendant Charles Davis is the Sheriff of Quitman County employed by the Quitman County Sheriff's Office. The headquarters of the Quitman County Sheriff's Office are located at 121 Main St. Georgetown, GA 39854 in Quitman County, Georgia. Defendant Charles Davis may be served at this address. At all times relevant to this lawsuit, Defendant Charles Davis acted under the color of law. Defendant Charles Davis is sued in his individual capacity.

4.

Defendant Quitman County ("the County") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued. The County can be

served at: 25 Old School Road Georgetown, GA 39854. At all times relevant to this lawsuit, Defendant Quitman County acted under the color of law.

5.

All defendants reside in the Middle District of Georgia.

**JURISDICTION AND VENUE**

6.

This case presents a federal question and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

8.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. §

1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

9.

Venue is proper in the Middle District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and Defendants reside within this district.

10.

All of the parties herein are subject to the jurisdiction of this Court.

11.

Attorney's fees are authorized under 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

12.

At approximately 6:30pm on February 15, 2023 Deputy Baidsen arrived at the property of George Barber. Deputy Baidsen allegedly arrived at the neighborhood as a result of a call of somebody riding a four-wheeler. Said call was placed by an individual named Kyle Hovey who also lives in the neighborhood.

13.

More specifically Deputy Baidsen arrived as a result of a personal phone call he had received from Defendant Sheriff Charles Davis who upon information and belief ordered Deputy Baidsen to confront Plaintiff Barber.

14.

Sheriff Charles Davis plays personal favorites with the person named Kyle Hovey who was the individual that placed the call regarding Mr. Barber's four wheeler. This favoritism is based on a variety of personal relationships between Sheriff Davis and other individuals which include Assistant Secretary Misha Rump (Sheriff Davis' niece), her mother, Chief Deputy Stanley Hayes of Quitman County Sheriff's Office, and others.

15.

Upon information and belief Sheriff Davis let Deputy Baidsen know - directly or indirectly - that he was to deal with Mr. Barber in such a way as to satisfy Mr. Hovey (the complainant) regardless of the legality of the measures he (Deputy Baidsen) were to undertake. Deputy Baidsen understood this as meaning that he was to arrest Mr. Barber regardless of whether the arrest was legal or not.

16.

While approaching Mr. Barber's house and while on Mr. Barber's property Deputy Baidsen encountered Mr. Barber who inquired about the reason for Deputy's presence at his property.

17.

Deputy Baidsen immediately started screaming and became verbally abusive towards Mr. Barber. Instead of properly explaining the reason for his presence Deputy Baidsen threatened to "lock [Mr. Barber] up" and told him to "shut your mouth or you are going to jail!" Deputy Baidsen screamed about "getting call after call" about Mr. Barber's four-wheeler – implying that he was there in reference to Mr. Barber's four-wheeler.

18.

As Mr. Barber tried to explain – in a very calm voice - that he was not riding a four-wheeler Deputy Baidsen admitted that he knew that Mr. Barber wasn't riding the four-wheeler – but stated that he does not care – because the four-wheeler allegedly belongs to Mr. Barber.

19.

Deputy Baidsen stated several times that he did not want Mr. Barber to talk to him even though Deputy Baidsen was on Mr. Barber's property verbally and physically confronting Mr. Barber about the four wheel and Mr. Barber merely attempted to calmy explain to Mr. Baidsen that he has not done anything wrong and was not the person riding the four wheeler. Deputy Baidsen said things such as: "I get one word out of you - I'm gonna lock you up!" and "If you say one more word I'm going to arrest you!"

20.

Mr. Barber's wife – who was standing some distance away – was filming the encounter. At one point Mr. Barber's wife tried to explain to Deputy Baidsen – in a very calm voice – that Mr. Barber was looking to sell the four-wheeler. In response to Mrs. Barber addressing Deputy Baidsen the Deputy continued to scream and threatened Mr. Barber's wife with going to jail if she does not go into the house. Mr. Barber's wife explained to Deputy Baidsen that she needs to get a hold of the family dog in response to which Deputy Baidsen threatened to kill the family dog.

21.

Throughout the entire encounter Deputy Baidsen appeared to be acting in rage and out of control. Ultimately Deputy Baidsen placed Mr. Barber under arrest despite Mr. Barber not having done anything illegal. Mr. Barber informed Deputy Baidsen that he has a back injury. Some time after Mr. Barber was arrested he was transported to Quitman County Sheriff's Office.

22.

While Mr. Barber was under arrest Deputy Baidsen injured Mr. Barber by applying gratuitous and excessive force to Mr. Barber. Despite knowledge of Mr. Barber's back injury Deputy Baidsen for no reason whatsoever gratuitously injured Mr. Barber's back while pushing Mr. Barber into the police vehicle at which time Mr. Barber was compliant and in handcuffs. Specifically Deputy Baidsen did not order Mr. Barber to enter the police vehicle or give him a chance to do so – but instead pulled on Mr. Barber's handcuffs, twisted his body, and slammed Mr. Barber inside the vehicle without warning. Thereafter and during the transport of Mr. Barber to the Sheriff's Office Deputy Baidsen continuously mocked Mr. Barber for his body weight and health conditions and deliberately drove with

excessive speed over speed bumps knowing that this was aggravating Mr. Barber's back injury and despite Mr. Barber's pleas not to do so. Mr. Barber ultimately had to seek medical attention for his injuries.

### 23.

Some time after arriving to the Sheriff's Office Mr. Barber was released without charges.

### 24.

Quitman County Sheriff's Office had knowledge that Deputy Baidsen exhibited problematic behavior while performing his job functions in the past. Quitman County Sheriff's Office hired Mr. Baidsen despite knowing of him exhibiting similar behavior at his prior job. As such Quitman County was deliberately indifferent to Deputy Baidsen's behavior and furthermore on the day in question the Sheriff himself asked Deputy Baidsen to go and illegally confront Mr. Barber which in turn resulted in Mr. Barber's illegal arrest and detention. Defendant Sheriff Davis acted as a final policy maker for Quitman County in mattes related to the present action.

**COUNT I**
**42 U.S.C. § 1983: Unlawful Seizure in violation of the Fourth Amendment**
**(As to Defendants Baidsen and Davis)**

25.

Paragraphs 1 through 24 are hereby re-alleged as if fully pled herein.

26.

The conduct of defendants Baidsen and Davis in causing and procuring the

detention and arrest of Plaintiff without arguable probable cause constituted an

unreasonable seizure of his person in violation of the Fourth Amendment.

27.

Defendant Baidsen was aware that Plaintiff had broken no laws – yet he

arrested Plaintiff anyway. Defendant Baidsen admitted that he knew that Plaintiff

was not riding a four wheeler but proceeded to arrest Plaintiff regardless.

28.

Upon information and belief Sheriff Davis directly or indirectly pressured

Deputy Baidsen to arrest Mr. Barber.

29.

Upon information and belief Sheriff Davis made working conditions for

Deputy Baidsen such that drove Deputy Baidsen to arrest Mr. Barber.

30.

Sheriff Davis exhibited personal favoritism towards Kyle Hovey – the individual who complained about Mr. Barber's four wheeler. Based on this personal favoritism Sheriff Davis personally called Deputy Baidsen and ordered him to deal with Mr. Barber in a manner that would satisfy Mr. Hovey regardless of the legality of such actions up to and including an illegal arrest of Mr. Barber.

31.

The law being clearly established in 2023 that an officer of the state cannot cause someone to be arrested without arguable probable cause, Defendants are not entitled to qualified immunity.

32.

The law being clearly established in 2023 that an officer of the state cannot unreasonably prolong one's detention, Defendants are not entitled to qualified immunity.

## COUNT II
## 42 U.S.C. § 1983: First Amendment Retaliation in violation of the First Amendment
### (As to Defendant Baidsen)

33.

Paragraphs 1 through 24 are hereby re-alleged as if fully pled herein.

34.

Defendant Baidsen deliberately initiated and carried out detention and arrest of this Plaintiff because Plaintiff exercised his rights to free speech.

35.

Deputy Baidsen stated several times that he did not want Mr. Barber to talk to him even though Deputy Baidsen was on Mr. Barber's property verbally and physically confronting Mr. Barber about the four wheeler and Mr. Barber merely attempted to calmy explain to Mr. Baidsen that he has not done anything wrong and was not the person riding the four wheeler. Deputy Baidsen said things such as: "I get one word out of you - I'm gonna lock you up!" and "If you say one more word I'm going to arrest you!" Thus Mr. Barber would not have been detained and arrested but for his exercise of his First Amendment rights in trying to speak, explain and protest his innocence to Defendant Baidsen.

13

36.

Defendant's actions were meant to punish the Plaintiff for his exercise of his First Amendment rights and to prevent him from further exercising his First Amendment rights by abruptly cutting off his verbal explanations and arresting him.

37.

The intentional actions of Defendant in falsely arresting Plaintiff interfered with Plaintiff's right of freedom of speech and expression in violation of the First Amendment to the US Constitution.

38.

The law being clearly established in 2023 that an officer of the state cannot detain or arrest a person for their exercise of freedom of speech, Defendant is not entitled to qualified immunity.

39.

Mr. Barber alleges that he was detained and arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech or expression had not been so detained.

40.

Mr. Barber alleges that no person in Mr. Barber's situation has been arrested, harassed, and threatened in a manner that Mr. Barber had been - when they were not engaged in the type of protected speech Mr. Barber was engaged in.

## COUNT III
## Municipal Liability
## (As to Defendant Quitman County)

41.

Paragraphs 1 through 24 are hereby re-alleged as if fully pled herein.

42.

Plaintiff timely gave the County ante litem notice. In its response to Plaintiff's Ante Litem Notice – which response is dated July 27, 2023 - Quitman County denied any wrongdoing and denied liability.

43.

Quitman County has purchased liability insurance that provides coverage and indemnification for liability arising from the operations of the Quitman County Sheriff's Department and the conduct of law enforcement officers employed by the

County. That policy was in effect at all times relevant to this complaint.

44.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by Quitman County.

45.

The County's insurer responded to Plaintiff's ante litem notice but denied liability.

46.

During the course of their employment and while fulfilling their official duties Deputy Baidsen and Sheriff Davis disregarded clearly established law that a person may not be arrested without probable cause, said actions resulting in a false arrest, as well as retaliation for First Amendment protected activity.

47.

The County is liable for the actions of Deputy Baidsen, and Sheriff Davis under the doctrine of respondeat superior for violations of State law. Under that doctrine, the County is not entitled to present a defense of official immunity.

48.

The County is also liable under the Monell doctrine due to its failure to

provide proper training, due to its indifference to Deputy Baidsen's problematic

performance and behavior, and because there was a decision by a final policy

maker to arrest Mr. Barber or to conduct arrests in cases such as Mr. Barber's.

49.

Deputy Baidsen also acted pursuant to direct instructions from a final

Quitman County policy maker Defendant Sheriff Charles Davis.

50.

As a Sheriff of Quitman County Charles Davis is a final policy maker in

matters of law enforcement for Quitman County and was acting as a final policy

maker in matters related to this complaint.

51.

Upon information and belief Sheriff Davis directly or indirectly pressured

Deputy Baidsen to arrest Mr. Barber. Upon information and belief Sheriff Davis

made working conditions for Deputy Baidsen such that drove Deputy Baidsen to

arrest Mr. Barber. Defendant Davis' intention was to harass Mr. Barber in order to

satisfy Mr. Hovey with actions up to and including an illegal arrest. Defendant

Baidsen - in turn - carried out those directions.

52.

Upon information and belief Sheriff Davis let Deputy Baidsen know -

directly or indirectly - that he was to deal with Mr. Barber in such a way as to

satisfy Mr. Hovey (the complainant) regardless of the legality of the measures he

(Deputy Baidsen) were to undertake. Deputy Baidsen understood this as meaning

that he was to arrest Mr. Barber regardless of whether the arrest was legal or not.

**COUNT IV**
**42 U.S.C. § 1983: Excessive Force in violation of the Fourth Amendment**
**(As to Defendant Baidsen)**

53.

Paragraphs 1 through 24 are hereby re-alleged as if fully pled herein.

54.

This Count is brought under 42 U.S.C. § 1983 for the use of excessive force

in arresting Plaintiff and violating his rights secured by the Fourth Amendment of

the United States Constitution.

18

55.

It is clearly established law that under the Fourth Amendment, a law enforcement officer may not use force when arresting an individual who is compliant and not resisting.

56.

It is clearly established law that under the Fourth Amendment, a law enforcement officer may not continue to use force when arresting an individual who has already been subdued.

57.

Defendant Baidsen used excessive force among other things by pulling Mr. Barber by the handcuffs without warning, twisting his body, and slamming Mr. Barber inside the police car while Mr. Barber was in handcuffs, was fully compliant and was not offering any resistance whatsoever. Defendant Baidsen continued to injure Mr. Barber by driving in such a way as to aggravate his back injury while mocking Mr. Barber at the same time.

58.

Deputy Baidsen's use of force was not reasonable under the circumstances

and no reasonable officer could believe the level of force used by Deputy Baidsen against Plaintiff was necessary.

59.

Even if some force was required to handle Plaintiff, Deputy Baidsen's use of force was grossly disproportionate to that necessary to effect the arrest and transport Mr. Barber. At no time was there any danger to officer safety or safety to any other person.

60.

Deputy Baidsen's use of force caused Plaintiff to suffer substantial pain, injuries, medical expenses, psychological and emotional trauma, and economic loss.

**DAMAGES**

61.

Paragraphs 1 through 24 are hereby re-alleged as if fully pled herein.

62.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff was unreasonably and unlawfully detained, arrested, and

injured. Mr. Barber was detained, arrested, and deprived of his liberty, was

subjected to physical restraint, confinement, threats, intimidation, harassment,

physical injury, mental suffering, and emotional distress that is expected to

continue into the future, and was forced to incur other economic and non-economic

losses for which Defendants are liable to Plaintiff in an amount to be proven at trial

and determined by the enlightened conscience of fair and impartial jurors.

63.

The aforementioned misconduct of Defendants rose to such a level of bad

faith, willfulness, and reckless disregard as to authorize the imposition of punitive

damages against each one of them.

64.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of

litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against each Defendant

for nominal, special, compensatory and punitive damages for each violation of the

Plaintiff's constitutional rights in an amount to be determined by the enlightened

conscience of fair and impartial jurors;

c) That Plaintiff be awarded attorney's fees and reasonable expenses of

litigation;

e) That all costs of this action be taxed against Defendants; and

f) That the Court award any additional or alternative relief as may be deemed

appropriate under the circumstances.

Respectfully submitted this 4th day of August 2023.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange, Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dragoceparlaw@gmail.com